UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

BIANCA MONROE LARSON,

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,

        Defendant.

CASE NO. 2:17-CV-00029-DWC

ORDER ON PLAINTIFF'S COMPLAINT

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits ("DIB"). The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 5.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred by failing to properly evaluate the medical opinion evidence. Therefore, the ALJ's decision is

vacated, and this case is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## **PROCEDURAL & FACTUAL HISTORY**

On August 20, 2015, Plaintiff filed an application for DIB. *See* Dkt. 7, Administrative Record ("AR") 144-45. Plaintiff alleges she became disabled on June 30, 2012, due to recurrent patellar dislocations/subluxations, arthritis, and obsessive-compulsive disorder ("OCD"). *See* AR 144, 168. Plaintiff's application was denied upon initial administrative review and on reconsideration. *See* AR 61-83. A hearing was held before an ALJ on July 1, 2015, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 37.

On October 18, 2015, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i) and 223(d) of the Social Security Act. AR 28. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on December 13, 2016, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On January 7, 2017, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further proceedings, because the ALJ improperly evaluated the opinions of two treating physicians, one examining physician, and two state agency medical consultants. Dkt. 9, p. 1.

## **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a

scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## **DISCUSSION**

I. Whether the ALJ Properly Evaluated the Medical Opinion Evidence.

**A. Standard**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

**B. Application of Standard**

*1. Morgan Carlson, M.D.*

Dr. Carlson examined Plaintiff on May 4, 2014. AR 263. Dr. Carlson noted Plaintiff had a history of bilateral knee pain secondary to dislocating patella and chondromalacia, with positive MRI findings for chondromalacia. AR 263. Plaintiff experienced bilateral patella dislocations every few months, with increasing frequency and duration of symptoms as she aged. AR 263. On examination, Plaintiff demonstrated full range of motion and 5/5 strength in all upper and lower extremities, except for 4/5 hip flexion/knee extension bilaterally. AR 265. Plaintiff demonstrated tenderness to palpation in her medial and lateral joint lines, however Dr. Carlson was unable to conduct additional testing such as assessment of ligamental laxity, patella grind test, or meniscus provoking tests, due to Plaintiff's severe anxiety surrounding any knee examination. AR 266.

Dr. Carlson diagnosed Plaintiff with chronic bilateral knee pain with a history of chronic bilateral patella dislocation, exacerbated by anxiety. AR 266. As a result of these impairments, Dr. Carlson opined Plaintiff would be limited to standing and walking for no more than four hours in an eight-hour day, with the ability to go from standing to seated position every 30 minutes as needed. AR 266. Dr. Carlson also opined Plaintiff could sit eight hours in an eight-hour day, provided she was able to go from sitting to standing every 30 minutes as needed, could lift 20 pounds occasionally and 10 pounds frequently, and should not crawl, crouch, kneel, balance, or climb. AR 266-67. Dr. Carlson also noted Plaintiff might benefit from the use of a walking stick over uneven surfaces. AR 266.

The ALJ gave Dr. Carlson's opinion significant weight. AR 25. However, the ALJ discounted Dr. Carlson's opinion Plaintiff would need a sit-stand option for three reasons:

> The claimant does not need a sit-stand option in performing her maximum functional capacity, [1] as no such requirement has been noted in the treatment

record, and [2] the claimant does not require any assistive device for ambulation [AR 268,[1] 303]. [3] on the other hand, the claimant reported being able to dust, vacuum, wash dishes, prepare meals and do laundry, [AR 198] activities whose exertional level is consistent with the [residual functional capacity ("RFC")].

AR 25 (numbering added). Further, despite otherwise giving Dr. Carlson's opinion significant weight, the ALJ did not include Dr. Carlson's opinion that Plaintiff should not crawl, crouch, kneel, balance, or climb in the RFC or in his hypotheticals to the vocational expert. AR 23 (including no limitations in these areas in the RFC), 54 (propounding a hypothetical to the vocational expert which included "occasional climbing . . . unlimited balance . . . frequent stoop . . . no kneeling . . . occasional crouch . . . occasional crawl"). Plaintiff argues the ALJ's failure to include the sit-stand and postural limitations in the RFC was harmful error, and the Court agrees.

While an ALJ is not necessarily bound by the opinion of any physician or psychologist, the ALJ must still offer specific reasons, supported by substantial evidence, for giving less than full weight to their opinions. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). *See also* Social Security Ruling ("SSR") 96-6P, *available at* 1996 WL 374180, at *2. Though the ALJ purportedly gave significant weight to Dr. Carlson's opinion, the ALJ otherwise propounded a hypothetical to the vocational expert which assumed Plaintiff was capable of at least occasional crawling, balancing, climbing, and crouching. AR 54.[2] By failing to offer any reasons whatsoever for not incorporating Dr. Carlson's opined limitations in crouching, crawling, balancing, or climbing in the RFC, the ALJ committed harmful error. *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). *Cf. Betts v. Colvin*, 531 Fed.Appx. 799, 800 (9th Cir. 2013) (finding the ALJ

---

[1] The ALJ cites to Exhibit 5F/6 (AR 268) for this proposition; however, Exhibit 5F/6 is an invoice for Dr. Carlson's examination, rather than any treatment record or note.

[2] Though it was not included in the written RFC, the ALJ propounded a hypothetical to the vocational expert which indicated "no kneeling." AR 54.

committed reversible error by purporting to give great weight to an examining physician, yet failing to include many of the physician's opined limitations in the RFC).

Further, the ALJ failed to offer specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Carlson's opinion Plaintiff would require a sit-stand option. First, an ALJ may properly consider whether a medical opinion is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (noting consistency with the record as a whole is an important factor when an ALJ weighs a medical opinion). However, "[t]he primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations." *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007). The limitation to a sit-stand option is an accommodation designed to address a claimant's functional limitations, rather than a medical sign or symptom which would be documented in treatment notes. That treatment records which identify Plaintiff's symptoms and diagnoses do not otherwise reflect such a specific limitation[3] is not substantial evidence a sit-stand limitation is unwarranted. *See Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985) (noting an ALJ erred by relying on a consultative examination report to discount a treating physician's opinion, where the examining physician "did not express any view on how Kane's musculoskeletal impairments affected his work ability."). The ALJ's conclusion that a sit-stand option was inconsistent with the remaining treatment record was unwarranted speculation. *See* SSR 86-8, 1986 WL 68636 at *8.

Second, the ALJ fails to explain how Dr. Carlson's opinion Plaintiff would require a sit-stand option is undermined by the fact Plaintiff did not require an assistive device for ambulation.

---

[3] Notably, the ALJ gave significant weight to the balance of Dr. Carlson's opinion, such as Dr. Carlson's opinion Plaintiff could lift no more than twenty pounds occasionally and ten pounds frequently, despite the fact the remainder of Dr. Carlson's opined limitations are similarly absent from the treatment record. *See, e.g.*, AR 242-57 (Plaintiff's treatment notes from Plaintiff's primary care physician and pain management specialist).

The ALJ must do more than state his conclusions, he must "set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick*, 157 F.3 at 725. There is no evidence in the record to suggest the use of a sit-stand option, which addresses limitations in sitting and standing, is at all correlated to a need to use an assistive device to ambulate. In fact, Social Security Regulations specify that an ability to ambulate without an assistive device only "provides information as to whether, or the extent to which, the individual is able to ambulate without assistance." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00(J)(4).[4] Further, as Plaintiff correctly notes, Dr. Carlson noted Plaintiff uses rails whenever possible and opined Plaintiff would benefit from the use of a walking stick over uneven surface. AR 263-64, 266. The ALJ's failure to explain his reasoning here is error.

Finally, Plaintiff's activities of daily living do not constitute a specific and legitimate reason for discounting Dr. Carlson's opinions. The ALJ found Plaintiff's ability to dust, vacuum, wash dishes, prepare meals, and do laundry to be inconsistent with a sit-stand option. AR 25. However, Plaintiff reported on several occasions that she was unable to do these tasks without taking rest breaks and changing positions. AR 44, 198. Indeed, Plaintiff noted she uses these breaks to change between sitting and standing positions. AR 44. In short, Plaintiff's activities of daily living do nothing but support Dr. Carlson's opinion Plaintiff needs a sit-stand option in order to work.

Because the ALJ failed to offer specific and legitimate reasons for discounting Dr. Carlson's opinion concerning sit-stand limitations, the ALJ erred. Further, the ALJ's failure to consider all of Dr. Carlson's opined limitations, despite purportedly giving them great weight, was

---

[4] Even then, the regulations note "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00(B)(2)(b)(2).

harmful error requiring remand. Thus, on remand, the ALJ should reevaluate the entirety of Dr. Carlson's opinion, including Dr. Carlson's opined sit-stand limitations.[5]

*2. Catherine Smith, M.D.*

Dr. Smith was Plaintiff's treating physician. AR 243. On June 12, 2015, Dr. Smith opined Plaintiff's knee condition would lead to a variety of physical limitations. AR 302-308. Specifically, Dr. Smith opined Plaintiff would be able to lift and carry no more than 10 pounds on an occasional basis, could sit and stand for no more than 45-60 minutes at one time, could walk for no more than 30 minutes at one time, would rarely be able to climb stairs and ramps, occasionally stoop, and never climb ladders and scaffolds, kneel, crouch, or crawl. AR 302-05.

The ALJ gave Dr. Smith's opinion little weight for three reasons: "[Dr. Smith's] opinion is contrary to [1] the longitudinal record, [2] X-ray results, [3] and the claimant's self-reported activities discussed throughout this decision." Plaintiff argues this was not a specific and legitimate reason, supported by substantial evidence, for discounting the only treating physician opinion in the record. The Court agrees.

Here, the ALJ's reasoning for each of the three reasons is conclusory, with no attempt to explain the nature of the purported inconsistencies with the record. As noted above, the ALJ was obligated to "set forth his own interpretations and explain why they, rather than the doctors' are correct." *Reddick*, 157 F.3 at 725. Simply reciting factors which could constitute reasons for

---

[5] Defendant correctly observes that two of the four jobs opined to by the Vocational Expert contained a sit-stand option. AR 55-57. Further, the Vocational Expert explained why his opinion deviated from the Dictionary of Occupational Titles. *See* AR 57 (noting the job of small products assembler, DOT # 706.684-022, as performed in Washington State, is more consistent with a sedentary job with a sit-stand option, as Washington's manufacturing base is different from the national profile). However, as the ALJ's other errors in evaluating Dr. Carlson's opinion warrant remand, the Court need not consider whether the ALJ's error in evaluating Dr. Carlson's sit-stand opinion, on its own, would have been harmless.

discounting physician opinions *generally*, without any attempt to explain why those factors apply to *this physician*, fails to achieve the requisite level of specificity mandated by our case law. *See McAllister v. Sullivan*, 888 F.2d 599, 602-03 (9th Cir. 1989) (finding similar reasoning for rejecting a treating physician's opinion was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed").

Even if the Court were to attempt to intuit from the ALJ's decision what medical records or activities of daily living were inconsistent with Dr. Smith's opinion, the ALJ's reasons would not constitute specific and legitimate reasons supported by substantial evidence. The ALJ's earlier discussion of Plaintiff's activities of daily living, for example, is limited to noting Plaintiff can cook, do laundry, and vacuum, though she requires several breaks to do so. AR 22, 25. However, Plaintiff consistently reported she was unable to sustain performance on these tasks, but instead required frequent breaks to rest and change positions from sitting to standing or vice versa. AR 44, 198. The mere fact Plaintiff performed some activities in a manner consistent with that of the treating physician's opinion is not a specific and legitimate reason for discounting Dr. Smith's opined limitations. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.")

Further, the ALJ's discussion of the treatment record and X-ray reports is incomplete. While the ALJ notes Plaintiff wished to "hold off" on treatment until after her honeymoon, the ALJ has no basis in the record to characterize this as "stopping treatment." AR 25. In fact, Dr.

Tomski advised her she would be able to wait until after her honeymoon to begin treatment, "given the chronicity of the problem." AR 258. The record does not indicate whether Plaintiff actually failed to pursue this treatment. As for Plaintiff's X-rays, the ALJ stated "Dr. Smith cited the claimant's knee condition as the basis of her opinion [AR 303]. However, there is little support for these limitations as opined, especially when the knee X-rays were normal [AR 261-62]." AR 26. The ALJ notes the X-ray examination report in the record was essentially normal; however, Dr. Smith did not rely on X-rays. Instead, the ALJ fails to mention that Dr. Smith relied on MRI scans which were consistent with chronic medial retinacular sprain and chondromalacia.[6] AR 246, 254. As Dr. Smith relied on imaging techniques better suited to assessing damage to soft tissues, the ALJ's use of X-ray scans to discount Dr. Smith's opinion does not constitute a specific and legitimate reason supported by substantial evidence.

Because the ALJ failed to offer specific and legitimate reasons for discounting Dr. Smith's opinion, the ALJ erred. On remand, the ALJ should reevaluate Dr. Smith's opinion.

### 3. Dr. James Basinski, M.D.

Dr. Basinski was Plaintiff's treating psychiatrist from September, 2013 until May 8, 2015. AR 269-301. Dr. Basinski diagnosed Plaintiff with chronic obsessive compulsive disorder, and noted Plaintiff's symptoms waxed and waned over a year-long period. AR 284-85. Over the course of Plaintiff's treatment, Dr. Basinski conducted numerous mental status examinations, which

---

[6] Plaintiff had the severe impairments of Chondromalacia patella and Chronic bilateral patella dislocation. Chondromalacia patella is, in essence, damage to the cartilage under the kneecap. *Kellner v. Colvin*, 2013 WL 3200581, at *4 (C.D. Cal. June 24, 2013) (*citing Chondromalacia patella*, Mayo Clinic, http://www.mayoclinic.com/health/ chondromalacia-patella/DS00777 (last visited June 13, 2017) ("Mayo Clinic")). While X-rays are effective at imaging bone, they are "less effective at viewing soft tissues"—such as cartilage—than MRI or CT scans. *Chondromalacia patella*, Diagnosis, Mayo Clinic, http://www.mayoclinic.com/health/chondromalacia-patella/DS00777 (last visited June 13, 2017)).

revealed anxious affect and compulsions, obsessions, and agoraphobia. *See, e.g.*, AR 270. At the conclusion of every examination, Dr. Basinski included the same treatment assessment:

> Continuing Fairly clearcut OCD symptoms and OCD diagnosis, exacerbated the last couple years of dating back the milder degree and childhood. Some agoraphobia tendencies. Of note, very difficult childhood with a very difficult Mother or Fa [sic] to internalize or identify with, which itself would be enough of a problem to warrant psychotherapy. No acute/chronic safety concerns.

AR 270, 272, 274, 276, 278, 280, 283, 284, 286, 288, 289, 291, 294, 297, 300. However, Dr. Basinski did not complete a mental RFC evaluation, or otherwise opine to any functional limitations arising out of Plaintiff's mental health impairments. Instead, the ALJ discussed the contents of Dr. Basinski's treatment notes and concluded they reflect a "sustained period of improvement" in her symptoms. AR 24.

Plaintiff first argues the ALJ erred by citing Dr. Basinski's treatment notes to find Plaintiff's condition had improved, despite Dr. Basinski's treatment notes reflecting Plaintiff was still experiencing OCD symptoms. "[R]eports of improvement in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms." *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014). However, the ALJ is responsible for resolving ambiguities and conflicts in the medical evidence, and assessing whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount [medical opinion evidence] falls within this responsibility." *Morgan v. Comm'r, Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). In this case, the Court agrees the notes which reflect Plaintiff's anxiety or OCD symptoms have improved are qualified, with Dr. Basinski documenting improvement on some days, and noting increased anxiety or OCD symptoms in subsequent appointments. *See, e.g.*, AR 284-85 (summarizing improvements and worsening of symptoms between January, 2014 and May, 2015). Nonetheless,

given the repeated documentation of improvement in symptoms over time, the ALJ could rationally interpret these treatment notes as reflecting a longitudinal pattern of improvement with treatment.

Plaintiff also argues the ALJ erred by failing to develop the record to obtain a functional capacity evaluation from Dr. Basinski. The ALJ "has an independent duty to fully and fairly develop the record." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal citations and quotations omitted). This duty exists even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 411, 443 (9th Cir. 1983). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). For example, this Court has previously found that, where a treating rheumatologist's notes were indecipherable and illegible, the ALJ had a duty to re-contact the physician to determine whether Plaintiff's fibromyalgia constituted a medically determinable impairment pursuant to SSR 12-2p. *See Williams v. Colvin*, 2015 WL 7018724, at **3-4 (W.D. Wash. Nov. 10, 2015). Also, where an ALJ relies on a medical expert who indicates the record is insufficient to render a diagnosis, the ALJ must develop the record further. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). But, where the record, taken as a whole, is adequate to evaluate a claimant's alleged impairment, the ALJ's duty to develop the record is not implicated. *See, e.g.*, *Baghoomian v. Astrue*, 319 Fed.Appx. 563, 566 (9th Cir. 2009); *H'Oar v. Barnhart*, 51 Fed.Appx. 731, 732 (9th Cir. 2002).

While Dr. Basinski did not complete a RFC assessment, the ALJ was able to rely on the opinion of non-examining medical consultant Eugene Kester, M.D., as the basis for his RFC finding. The ALJ noted Dr. Kester's opinion of no more than moderate limitations in most

functional areas was consistent with Dr. Basinski's notes and the rest of the record. AR 26. Plaintiff argues this was improper, as Dr. Kester completed his evaluation in June, 2014—only one month after Plaintiff began treatment with Dr. Basinski—and thus did not have an opportunity to review most of Dr. Basinski's treatment notes. Dkt. 9, p. 14. However, Dr. Basinski began treating Plaintiff in September, 2013, rather than May, 2014, and Dr. Kester's report indicates he reviewed Dr. Basinski's medical records as part of his evaluation. AR 70, 270-83. Further, while a nonexamining physician's opinion on its own is not considered substantial evidence, it may constitute substantial evidence if it is *consistent* with (rather than if it relied upon) other evidence in the record. *Lester*, 81 F.3d at 830-31; *Tonapetyan*, 242 F.3d at 1149. Here, Dr. Kester noted the medical evidence did not indicate a worsening of Plaintiff's mental health symptoms, which is consistent with Dr. Basinski's assessments and documentation of improvements in Plaintiff's OCD and anxiety symptoms. AR 74-75, 80 270, 272, 274, 276, 278, 280, 283, 284-85, 286, 288, 289, 291, 294, 297, 300. Thus, the ALJ's duty to develop the record was not triggered, as the ALJ had substantial evidence on which to base his conclusions as to Plaintiff's mental RFC: namely, the uncontradicted report of Dr. Kester, and the corroborating treatment notes of Dr. Basinski.

Nonetheless, as the case must be remanded for further consideration of the medical opinion evidence, Plaintiff should have an opportunity to obtain additional medical opinion evidence and present it to the ALJ.

*4. Nonexamining Medical Sources*

Plaintiff also argues the ALJ erred by giving significant weigh to the opinions of two non-examining medical sources, Dr. Kester and Robert Handler, M.D. But, an ALJ is only required to offer specific and legitimate reasons for *discounting* a medical opinion. *See Lester*, 81 F.3d at 831. Moreover, the ALJ has sole responsibility to resolve ambiguities and determine the credibility of medical evidence. *See Reddick*, 157 F.3d at 722. *See also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.

1995) (drawing a distinction between an ALJ *discounting* a medical opinion, and an ALJ *interpreting* a medical opinion). Provided an ALJ's reasoning is supported by substantial evidence, the Court is not permitted to reweigh the evidence. Nonetheless, as the ALJ's errors in evaluating the opinions of Dr. Carlson and Dr. Smith require remand, the ALJ will have to reweigh all of the medical opinion evidence on remand, including the opinions of Dr. Kester and Dr. Handler. Thus, the Court need not address Plaintiff's arguments as to Dr. Kester and Dr. Handler.

## **CONCLUSION**

Based on the foregoing reasons, the Court finds the ALJ committed harmful error by failing to properly evaluate the medical opinion evidence. Therefore, the Court orders the Commissioner's final decision be vacated in its entirety and this matter remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a *de novo* hearing. On remand, the ALJ should reevaluate the medical opinion evidence, reevaluate Plaintiff's subjective symptom testimony, and proceed on to Step Four and/or Step Five of the sequential evaluation as appropriate. The ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case should be closed.

Dated this 16th day of June, 2017.

_[signature]_
David W. Christel
United States Magistrate Judge